UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEFFREY JEDLICKI,
    Petitioner,
v.

                                                         Case No. 8:23-cv-772-TPB-SPF
                                                         Case No. 8:21-cr-135-TPB-SPF

UNITED STATES OF AMERICA,
    Respondent.
_____

**ORDER DENYING MOTION TO VACATE SENTENCE**

Jeffrey Jedlicki moves under 28 U.S.C. § 2255 to vacate his conviction and sentence for conspiring to commit wire fraud. After pleading guilty, he is currently serving a sentence of 96 months. He claims his guilty plea was coerced, disputes the facts supporting his guilty plea, and challenges the Court's jurisdiction. This motion is wholly frivolous, and Jedlicki is entitled to no relief.

**I.    Background**

Jedlicki, a convicted fraudster, was charged in the Middle District of Florida in 2021 with conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1349 and 1343. (Crim. Doc. 30)[1]  Just like his prior 2008 conviction in the

---

[1] In 2008, Jedlicki pleaded guilty to conspiracy to commit wire and mail fraud in the Southern District of Florida (Case No. 08-60160-cr-Marra). According to paragraph 40 of the presentence report in this case, his prior case in the Southern District of Florida involved fraudulent "boiler room" activities related to foreign currency. Jedlicki was sentenced to 46 months in prison, followed by 24 months of supervised release and ordered to pay $6,029,279.22 in restitution. (Crim. Doc. 52 at ¶ 40)

1

Southern District of Florida, Jedlicki's case before this Court involved fraudulent "boiler room" activities. Under a plea agreement, he pleaded guilty as charged. The United States agreed to recommend that Jedlicki receive a sentence at the low end of the guideline range if no adverse information suggested such a recommendation was unwarranted. (Crim. Doc. 34)

At his sentencing hearing on June 28, 2022, Jedlicki presented a written statement which the Court read out loud. In that statement Jedlicki said, "I stand here humbled before you today. I know there are no words that I can say that could possibly fix what I have done. My behavior and actions are inexcusable. *I feel deep sorrow, regret, remorse, and guilt for what I've done to the innocent victims and their families every minute of every day. I'm ashamed for the pain and embarrassment I've caused my mother, sister, my wife, my daughter, and my son. . . . I am truly sorry from the bottom of my heart for all I've done.*" (Crim. Doc. 72 at 16–17) (emphasis added) After the Court read his written statement out loud, Jedlicki followed-up by saying, "I mean that, Your Honor. I'm done with the investment business. I'm done with everything. I want to make my wrongs right." (*Id.* at 17)

Throughout the entire pendency of this case, until the time he received a sentence higher than he was hoping for, Jedlicki repeatedly acknowledged his wrongdoing and expressed his remorse. Indeed, when he entered his guilty

2

plea on September 16, 2021, Jedlicki admitted the following facts that support his guilty plea (Crim. Doc. 34 at 19–21):

> From at least as early as January 2015 to May 2020, in the Middle District of Florida and elsewhere, the defendant Jeffrey Jedlicki, conspired to commit wire fraud. Specifically, Jedlicki and his coconspirators operated international "boiler rooms," which defrauded victims primarily by selling worthless investments, in Panama and elsewhere. . . .
>
> Jedlicki and his coconspirators laundered fraud proceeds generated by the boiler rooms through several money laundering rings, including one controlled by Mary Marr. Marr and her associates operated a network of funnel bank accounts in the Middle District of Florida and elsewhere in the world in the names of shell companies, into which boiler room agents instructed and caused victims to wire their money. . . . Jedlicki used [laundered] funds to perpetuate the conspiracy—by paying operating expenses, boiler room agents, and coconspirators—and for their own personal enrichment. The transfers of these fraud proceeds affected interstate and foreign commerce.
>
> Jedlicki co-owned and co-operated . . . a Panama-based boiler room which operated under various names. Jedlicki and [a coconspirator] shared equally in the ill-gotten gains from the boiler room. Specifically, Jedlicki worked as a boiler room sales closer who was responsible for "loading" victims of the boiler room fraud from both his home in the Southern District of Florida and from the boiler room in Panama City, Panama. Jedlicki directed and caused victims to wire money to bank accounts controlled by [a coconspirator]. . . .
>
> In furtherance of this conspiracy, Jedlicki and his coconspirators transmitted and transferred, and caused to be transmitted and transferred, via international and interstate wires, funds he knew were procured from victims through false and fraudulent misrepresentations and material omissions. . . . Jedlicki and his coconspirators wired, or caused to be wired, victims' funds in the approximate amount of $3,244,592.00 to accounts controlled by [coconspirators] in furtherance of the wire fraud conspiracy. Jedlicki received fraud proceeds into a

> TD Bank account ending in 1173. He personally obtained approximately $750,000.00 of those proceeds. . . .
>
> Between January 2015 and June 2018, Jedlicki used laundered fraud proceeds to make payments in the amounts of $236,961.50 and $390,492.92 toward the purchase of the residence located at 16149 Pantheon Pass in Delray Beach, Florida.

The Probation Office applied a 16-level increase to Jedlicki's offense level because he was accountable for a loss of $3,244.592.00. (Crim. Doc. 52 at ¶ 28). Jedlicki's total offense level of 26 and his criminal history category of II resulted in an advisory guidelines range of 70 to 87 months. (*Id*. at ¶ 72)

At sentencing, this Court varied upward from the guidelines range and sentenced Jedlicki to 96 months. In view of his prior conviction in the Southern District of Florida for the same type of criminal behavior, this Court determined that the sentence was necessary to protect the public (Crim. Doc. 72 at 29–30):

> [M]y initial thought was the appropriate sentence here for somebody who went to prison for 46 months previously, got out and did the exact same thing two years later, is closer to the maximum sentence[.] . . . With 149 victims internationally and $3.2 million stolen, . . . the Guidelines [do not] adequately reflect[] the seriousness of the situation[.] . . .
> I'm going to go with eight years. . . . and that is to protect the public, because I have no confidence that, when Mr. Jedlicki gets out, he won't end up doing something else illegal and ripping off additional people, because that's what he did last time.

Jedlicki filed no appeal.

4

## II.    Analysis

Instead of recognizing that he got a significant break by not getting an even longer sentence -- which he probably deserved for committing exactly the same kind of fraud he had already been sentenced to prison for committing just a few years earlier -- Jedlicki now moves to vacate his conviction and sentence and claims: (1) that he "was a resident of Panama and question[s] [the] U.S. jurisdiction"; (2) that his company "was not involved with any U.S. residents or entities"; (3) that he "was not involved in any wire transfers of funds of any kind"; and (4) that he "signed the plea agreement under duress from fear of a twenty year prison term for a crime [he] didn't commit." He urges the Court to "reduce [his] sentence to time served." (Civ. Doc. 5 at 12) The United States argues that Jedlicki's claims can be summarily dismissed because he fails to carry his burden of proof. [2] This motion is wholly frivolous and is due to be denied.[3]

---

[2] An earlier order directs Jedlicki to reply within thirty days of the United States' filing its response. (Civ. Doc. 6 at 2) The United States filed its response on September 14, 2023. (Civ. Doc. 10) To date, Jedlicki has not replied.

[3] Alternatively, the United States correctly argues that Jedlicki procedurally defaulted these claims by not raising them before this Court or on direct appeal. The Court rejects Jedlicki's claims as meritless. *See Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020) ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event."); *Garrison v. United States*, 73 F.4th 1354, 1359 n.9 (11th Cir. 2023) (same).

**A.     Ground Four**

In one sentence, and without any supporting details, Jedlicki claims that "[he] signed the plea agreement under duress from fear of a twenty year prison term for a crime [he] didn't commit." (Civ. Doc. 1 at 5) Jedlicki neglects to identify any person who coerced him to plead guilty.

"A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack." *Machibroda v. United States*, 368 U.S. 487, 493 (1962). However, a defendant's statements at the plea hearing "constitute a formidable barrier in any subsequent collateral proceedings" because "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements under oath a plea colloquy are true."). "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

Jedlicki supports this vague claim with neither factual detail nor record evidence. A movant is not entitled to relief when his claim is merely "conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1992); *Saunders v. United States*, 278 F. App'x 976, 979 (11th Cir.

6

2008) (explaining that a defendant must allege "reasonably specific, non-conclusory facts . . . to undermine confidence in the outcome").

Also, Jedlicki's claim is refuted by the plea agreement and his sworn statements at the plea hearing. In the plea agreement, he acknowledged that he was "pleading guilty because [he] is in fact guilty" and that he was "pleading guilty freely and voluntarily . . . and without threats, force, intimidation, or coercion of any kind." (Crim. Doc. 34 at 18–19) He further acknowledged his understanding that the United States would recommend to the Court that he receive a sentence at the low end of the guidelines range but that this recommendation "is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea." (*Id*. at 4) Jedlicki initialed each page and signed the plea agreement.

At the plea hearing, Jedlicki again confirmed that he was pleading guilty because he is, in fact, guilty and that no one forced, threatened, coerced or intimated him regarding his decision to plead guilty. (Crim. Doc. 73 at 39) He confirmed that there were no "other promises or assurances of any kind given to [him] in order to get [him] to plead guilty other than those reflected in [his] plea agreement." (*Id*. at 28) He understood that he faced a maximum sentence of twenty years imprisonment and that "the District Judge is not bound by the guidelines range" and "has the authority to impose a sentence that is more severe or less severe than the guidelines recommend." (*Id*. at 21 and 26) The

7

magistrate judge found that Jedlicki was pleading guilty freely, voluntarily, and knowingly and with the advice of counsel, and Jedlicki never objected to this finding. (*Id.* at 39–40)

Finally, at the sentencing hearing, Jedlicki made no attempt to withdraw his guilty plea and neglected to notify this Court during allocution of any coercion. (Crim. Doc. 72) In fact, as previously mentioned, Jedlicki repeatedly acknowledged his wrongdoing and expressed his remorse (*Id.* at 16–17):

> COURT: (reading aloud Jedlicki's written statement) I stand here humbled before you today. I know there are no words that I can stay that could possibly fix what I have done. My behavior and actions are inexcusable. I feel deep sorrow, regret, remorse, and guilt for what I've done to the innocent victims and their families every minute of every day. I'm ashamed for the pain and embarrassment I've caused my mother, sister, my wife, my daughter, and my son. . . . I am truly sorry from the bottom of my heart for all I've done.
>
> JEDLICKI: I mean that, Your Honor. I'm done with the investment business. I'm done with everything. I want to make my wrongs right.

Jedlicki offers no argument or evidence to disavow his confirmations under oath that no one coerced him to plead guilty and that he was pleading guilty because he is, in fact, guilty. He made specific assurances by entering into the plea agreement, during the plea hearing, and at sentencing that discredit his current claim that he was coerced to plead guilty for fear of receiving a twenty-year sentence for a crime he did not commit. *See Winthrop-*

*Redin v. United States*, 767 F.3d 1210, 1217 (11th Cir. 2014) ("The district court is entitled to discredit a defendant's newly-minted story about being [coerced] when that story is supported only by the defendant's conclusory statements" and is contradicted by the record of the change-of-plea colloquy.). He is entitled to no relief on Ground Four because, other than his conclusory and unsubstantiated claim that he was coerced, he offers no evidence to disavow his statements under oath to the contrary.

**B.     Grounds Two and Three**

Jedlicki claims that his company "was not involved with any United States residents or entities" and that he "was not involved in any wire transfers of funds of any kind." Again, these claims are refuted by Jedlicki's factual admissions in the plea agreement and his sworn statements at the plea hearing. In the plea agreement, he explicitly admitted that "[he] and his coconspirators laundered fraud proceeds generated by the boiler rooms through several money laundering rings" including "a network of funnel bank accounts in the Middle District of Florida." (Crim. Doc. 34 at 20) And, he admitted that he "wired, or caused to be wired, victims' funds in the approximate amount of $3,244,592.00 to accounts controlled by [coconspirators] in furtherance of the wire fraud conspiracy." (*Id*. at 21)

At the plea hearing, Jedlicki declined to have the factual basis read aloud and accepted the facts without any objection (Crim. Doc. 73 at 37–38):

9

| | |
|---|---|
| COURT: | Sir, I recognize you don't have your plea agreement with you here during this hearing. Would you like the Court to have those facts read to you one more time, because I am going to ask you in a moment whether those facts are true. Would you like those facts read to you or do you remember those facts? |
| JEDLICKI: | I remember, but if you would like to, that's fine with me, sir. It's your court. |
| COURT: | No sir, this is for your benefit, because I'm going to ask you in a moment whether the facts as set forth in your plea agreement are true. And that's important because the Court needs to know whether there is a factual basis for your plea. So, if you would like them read to you just to make sure that you agree with those facts, I'm more than happy to do that. It's up to you. |
| JEDLICKI: | No, I'm good. I read it over and over. I'm good, sir. |
| COURT: | So, you are satisfied that you know the facts as set forth on pages 19 through 22 of your plea agreement and you do not require those to be read to you again during this hearing; is that correct? |
| JEDLICKI: | No, sir. No, sir. |
| COURT: | Are the facts as set forth in your plea agreement, specifically on pages 19 through 22, are those facts true? |
| JEDLICKI: | Yes, sir. |

Finally, at sentencing, Jedlicki lodged no objection to the factual content of the presentence report and neglected to inform this Court during allocution of any disagreement with the factual basis supporting his guilty plea. (Crim. Doc. 72 at 5 and 16–17)

Jedlicki is entitled to no relief on Grounds Two and Three because he offers no argument or evidence to disavow his admissions under oath to the factual basis supporting his guilty plea. *See Winthrop-Redin*, 767 F.3d at 1217.

### C. Ground One

Without any explanation, Jedlicki "questions" this Court's jurisdiction because he was a resident of Panama. To the extent he challenges the Court's subject matter jurisdiction to adjudicate the charged offense, such vague and undeveloped claim lacks merit. "Congress has provided the district courts with jurisdiction . . . of 'all offenses against the laws of the United States.'" *Alikhani v. United States*, 200 F.3d 732, 734 (11th Cir. 2000) (quoting 18 U.S.C. § 3231). Where an indictment charges a defendant with violating the laws of the United States, § 3231 provides the Court with subject matter jurisdiction and empowers it to enter judgment on the indictment. *Id.* at 734–35. Here, the Superseding Information charged Jedlicki with conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1349 and 1343. This invoked the Court's subject matter jurisdiction under § 3231. *See Alikhani*, 200 F.3d at 734–35.

Additionally, this claim is undermined by Jedlicki's factual admissions in the plea agreement. He admitted that he "was responsible for 'loading' victims of the boiler room fraud from both *his home in the Southern District of Florida* and from the boiler room in Panama City, Panama." (Crim. Doc. 34 at 20–21) (emphasis added) To the extent he claims that his Panama residency

divests this Court of jurisdiction, such a claim fails because he admitted to committing acts in furtherance of the conspiracy *while residing in his Florida home.*

## III. Conclusion

Jedlicki's frivolous motion under § 2255 to vacate, set aside, or correct his sentence (Civ. Doc. 3) is **DENIED**. The clerk is directed to enter a judgment against Jedlicki, terminate any pending motions, close this case, and enter a copy of this order in the criminal case.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS

Jedlicki is not entitled to a certificate of appealability ("COA"). A prisoner moving under § 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Jedlicki must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues,

Jedlicki is entitled to neither a certificate of appealability nor an appeal in forma pauperis.

A certificate of appealability is **DENIED**. Leave to appeal in forma pauperis is **DENIED**. Jedlicki must obtain permission from the circuit court to appeal in forma pauperis.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 26th day of August, 2024.

**TOM BARBER**
**U.S. DISTRICT JUDGE**